**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIE HUNTER,

      Petitioner,

v.                                  Case Number: 2:07-CV-15049

CINDI CURTIN,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner Willie Hunter, a Michigan prisoner, has filed a *pro se* petition for a writ of habeas corpus. Petitioner challenges his convictions in the Wayne County Circuit Court for felony murder, Mich. Comp. Laws § 750.316(1)(b); assault with intent to murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Because the court finds Petitioner's claims to be without merit, the court will deny the petition.

**I. BACKGROUND**

      Petitioner's convictions arise from the fatal shooting of Izat "Steve" Bashsa and the wounding of Martin Algageta during an August 12, 2004 robbery at the Harper Liquor Shop on Harper Avenue in Detroit. Algageta, an employee of the liquor store, testified at trial that he saw Petitioner enter the store several times prior to the event in question, always in the company of co-defendant David Perin. (Trial Tr. 12/06/04 at 13-14.)

On the day of the events, Perin was already in the store, admitted under a ruse about using the bathroom in the employees-only area, when Petitioner entered the same area and pointed a machine gun at Algageta's chest.  Perin produced a pistol and aimed it at Bashsa.  Algageta and Bashsa were told to lie down on the floor, Petitioner saying "lay down on the floor, motherfucker" (Trial Tr. 12/06/04 at 19), whereupon Perin said, "if you want to do this clean, we will do this clean.  Or if you guys want to die, we can do it that way, or we can do it right now."  (Trial Tr. 12/06/04 at 21.)  Perin also said to Petitioner, "[I]f they move, kill them."  (*Id.*)   Both store employees repeatedly begged for their lives.  *Id.* Petitioner held his gun on the employees while Perin removed cash and other items from the store.  (*Id.*)  Later, Petitioner and Perin herded the employees into the store cooler and told them to lie down.  Perin shot Bashsa, killing him, and shot Algageta, who was rendered unconscious.  (Trial Tr. 12/06/04 at 22-23.)

Petitioner and his co-defendant were located in Tupelo, Mississippi, two days later.  Ernest Wilson, a Detroit police sergeant, testified that he traveled to Mississippi and inventoried the property his Mississippi counterparts found in the defendants' possession.  Wilson found that the identification numbers of the cigarette cartons and telephone calling cards in the defendants' possession matched those taken from the liquor shop on the day of the shootings.  (12/08/04 Trial Tr. at 21.)  Other physical items found two matched descriptions of things from the store, including cognac.  (Trial Tr. 12/06/04 at 41.)

At trial, Wilson testified that he informed Petitioner of his Miranda rights, and that Petitioner signed a form waiving those rights, including his right to remain silent, and

that he did not request an attorney.  Wilson said he wrote down Petitioner's verbal statement and then obtained Petitioner's signature.  (12/07/04 Trial Tr. at 139-44.)

In the statement, Petitioner said he and Perin agreed to rob the store and Petitioner's sole responsibility in the enterprise was to hold a rifle.  While he held the rifle, Perin took the employees to the store cooler and Petitioner heard several shots.  Eventually the defendants left the store after Perin had set it on fire.  (12/07/2004 Trial Tr. at 144-149.)

Following a joint trial in the Wayne County Circuit Court with co-defendant David Perin before separate juries, Petitioner was convicted of felony murder, second-degree murder, assault with intent to commit murder, felon in possession of a firearm and possession of a firearm during the commission of a felony.  At sentencing, the trial court vacated the second-degree-murder conviction and sentenced Petitioner to life for his felony-murder conviction, to two years for the felony-firearms conviction, to between 1 year and 6 months and 5 years for the felon-in-possession conviction and to between 40 years and 80 years for the assault-with-intent-to-commit-murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims through counsel:

I.      The court's refusal to suppress Mr. Hunter's confession was clearly erroneous and a deprivation of Mr. Hunter's constitutional rights under the Fifth and Fourteenth amendments, where the confession was involuntary and only extracted after physical violence, threats of violence, and denial of Mr. Hunter's repeated request for counsel.

II.     Mr. Hunter is entitled to a new trial where he was denied his Sixth Amendment right to the effective assistance of counsel, due process under the Fourteenth Amendment and Const. 1963, Art. I, Section 17, and

a fair trial through: (A) The trial court's refusal to allow him substitute counsel; and (B) counsel's arguments which essentially argued Mr. Hunter's guilt.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hunter,*[1] No. 260307, 2006 Mich. App. LEXIS 2139 (July 6, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims. Leave to appeal was denied. *People v. Hunter*, 723 N.W.2d 853 (Mich. 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting again the claims set forth above. Respondent has filed an answer to the petition contending the court should deny it for lack of merit.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

Title 28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

1 The appeals of Petitioner and co-defendant Perin were consolidated before the Michigan Court of Appeals.

4

> (1)     resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law,
>          as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented
>          in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144

F.3d 429 (6th Cir. 1998).  Additionally, this court must presume the correctness of state

court factual determinations.  28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*,

62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings

unless they are clearly erroneous").

     The United States Supreme Court has explained the proper application of the

"contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this Court and nevertheless
> arrives at a result different from [the Court's] precedent.

---

[2]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of
> habeas corpus by a person in custody pursuant to the
> judgment of a State court, a determination of a factual issue
> made by a State court shall be presumed to be correct. The
> applicant shall have the burden of rebutting the presumption
> of correctness by clear and convincing evidence.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

### III.  DISCUSSION

### A.  Petitioner's Fifth Amendment Claim

In his first claim for habeas corpus relief, Petitioner argues that the trial court erred in failing to suppress evidence of Petitioner's confession to a Detroit police officer while he was held in custody in Tupelo, Mississippi. Petitioner claims "the confession was involuntary and only extracted after physical violence, threats of violence, and denial of Mr. Hunter's repeated request for counsel." (Petr.'s Pet. at 9.)

6

Petitioner alleges that his signed confession was coerced.  The trial court

conducted a *Walker* hearing[3] to determine the admissibility of Petitioner's purported

confession.  The Michigan Court of Appeals summarized the hearing:

> At the Walker hearing, a police officer and Hunter provided conflicting
> versions of the events surrounding Hunter's interview.  The officer's
> testimony established and followed a set procedure while informing Hunter
> of his constitutional rights, and that Hunter understood those rights.  The
> officer testified that Hunter did not ask him for food or water, nor did he
> indicate that he needed more sleep.  The officer honored Hunter's
> requests to smoke a cigarette and speak to his mother before making his
> statement.  The officer further testified that, following a delaying in the
> start of the interview, Hunter acknowledged that he still understood his
> rights.  Further, Hunter verified his statement's truth by signing it and
> initialing corrections that were made.
>
> Hunter testified inconsistently regarding the point in time when he was
> advised of his constitutional rights during the interview process.  He also
> testified that he was under the influence of alcohol and ecstasy at the time
> of his arrest.  He described a hostile relationship between himself and the
> police, who he claimed did not honor his request for an attorney and
> threatened to beat him.  He described being slapped, punched, cursed at,
> and threatened with an assignment to a jail cell of white racist inmates.
> He stated that he was taken outside for a beating, not to smoke a
> cigarette.  Hunter claimed that two police officers fabricated every answer
> contained in his statement and threatened physical harm to force him to
> sign the statement.

*Hunter*, 2006 Mich. App. LEXIS 2139, at *12-13.

At the conclusion of the *Walker* hearing, the trial court denied Petitioner's motion

to suppress the confession, finding that the state had met its burden of showing by a

preponderance of the evidence that it was obtained lawfully.  In so deciding, the court

explained it was would balance Petitioner's testimony with that of the Detroit police

officer who obtained the confession:

---

[3]*People v. Walker*, 374 Mich. 331 (1965).

7

The testimony of Sergeant Wilson [indicates] that the defendant gave those statements, it was his words, what was written down was the defendant's own words and they even contain a portion of the defendant's own handwriting where he expressed remorse to the family. . . .

[The defendant's allegations] certainly [fly] in the face of common sense. If the police were interested in coercing someone into making a statement, I would think they would want to coerce a statement that was as incriminating and as damaging as possible, probably bereft of any type of remorse or humanity. And certainly Mr. Hunter's statement contents that were introduced reflected someone who was an aider and abettor, someone who was the, I don't want to say a minor player, but certainly one who was not involved in any type of execution of any victim in this particular case and that he was the follower in this particular matter and not the leader.

I do find on balance that the contents of the statement which Mr. Hunter claims was coerced is not one that one would reasonably expect the police to write down. I do find that - I credit Sergeant Wilson's testimony and his account of what happened. I do not credit Mr. Hunter's account.

(11/23/2004 Hrg. at 70-71 (emphasis added).)

The Michigan Court of Appeals affirmed the denial of Hunter's motion to suppress the confession. "Deference must be given to the trial court's assessment of witness credibility. . . . The trial court did not clearly err in its determination that, under the totality of the circumstances, Hunter's statement was knowing, intelligent, and voluntary." *Hunter*, 2006 Mich. App. LEXIS 2139, at *14 (citation omitted).

The Fifth Amendment provides that "[n]o person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive

8

police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).  In

determining whether a confession is voluntary, the ultimate question is "whether, under

the totality of the circumstances, the challenged confession was obtained in a manner

compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104,

112 (1985).  Those circumstances include:

1.    Police Coercion (a "crucial element")
2.    Length of Interrogation
3.    Location of Interrogation
4.    Continuity of Interrogation
5.    Suspect's Maturity
6.    Suspect's Education
7.    Suspect's Physical Condition & Mental Health
8.    Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).  All of the factors involved in the

giving of the statement should be closely scrutinized.  *Culombe v. Connecticut*, 367 U.S.

568, 602 (1961).  Without coercive police activity, however, a confession should not be

deemed involuntary.  *Connelly,* 479 U.S. at 167 ("[C]oercive police activity is a

necessary predicate to the finding that a confession is not 'voluntary' within the meaning

of the Due Process Clause").  Coercion may be psychological, as well as physical.  *See*

*Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Ledbetter v. Edwards*, 35 F.3d

1062, 1067 (6th Cir. 1994).  The burden of proving that a confession was involuntary

rests with the petitioner.  *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

The trial court, at the *Walker* hearing, weighed the testimony of Wilson, the

Detroit police sergeant, against that of Petitioner, in determining whether the confession

was coerced.  It concluded that the officer's testimony was credible, while Petitioner's

was not, and denied his motion to suppress the confession.  This determination was

affirmed by the Michigan Court of Appeals.  The determinations of the trial court and the

9

Michigan Court of Appeals are consistent with federal law.  Under the AEDPA, "[f]indings of fact of the state courts are presumed to be correct.  'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'"  *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001) (quoting § 2254(e)).  This deference includes trial court determinations on subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petition.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  It also includes a state trial court's credibility determination that Miranda warnings were given to a habeas petitioner.  *Seymour v. Walker*, 224 F. 3d 542, 553 (6th Cir. 2000).  Finally, it also includes a state court's finding that a petitioner did not make an unequivocal request for counsel before making a statement and that the statement was voluntarily made.  *Pritchett v. Pitcher*, 117 F. 3d 959, 963 (6th Cir. 1997).

    The state courts' various decisions in Petitioner's criminal litigation did not "(1) [result] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [result] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. § 2254(d).

    Simply put, Petitioner did not meet his burden of "proving that a confession was involuntary."  *Boles v. Foltz*, 816 F.2d at 1136.  In his petition, Petitioner fails to supply the "clear and convincing evidence" required to rebut the presumption of correctness as it relates to the trial court's factual determinations.  *Bailey*, 271 F.3d at 656.  While

10

Petitioner testified he had been beaten and coerced into confessing, the interviewing officer testified the confession was voluntary. The trial court weighed the evidence, and accepted the officer's testimony over Petitioner's testimony. The Michigan Court of Appeals, in affirming Petitioner's convictions, concluded that, "under the totality of the circumstances, Hunter's statement was knowing, intelligent, and voluntary." (Pet. at 41). The court has no basis to disturb that determination.

### B. Petitioner's Sixth Amendment Claim

In his second claim for habeas corpus relief, Petitioner argues that he was "denied his Sixth Amendment right to the effective assistance of counsel, due process under the Fourteenth Amendment and Const. 1963, Art. 1, Section 17,[4] and a fair trial through: [1)] the court's refusal to allow him substitute counsel; and [2)] counsel's arguments which essentially argued Mr. Hunter's guilt." (Pet. at 2.)

### 1. The Court's Refusal To Allow Substitution of Counsel

Petitioner claims the state trial court deprived him of his federal constitutional rights by denying his request for substitution of appointed counsel. On November 23, 2004, during a pretrial hearing at which Petitioner rejected the state's plea offer of a total of 37 years incarceration for the offenses (7/30/2008 hearing at 4), Petitioner told the court he wanted a new attorney.

---

[4]

This court's subject-matter jurisdiction in habeas corpus proceedings is circumscribed by the federal habeas statute, 28 U.S.C. § 2254. In habeas cases, federal courts may only consider claims only on the ground that [a petitioner] "is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a) (emphasis supplied). For that reason, the court will consider Petitioner's claim that he was deprived of his rights under the U.S. Constitution, but will not consider any claims arising under the Michigan Constitution.

DEFENDANT HUNTER: . . . I feel that I'm not getting the right representation right here.  I feel that it would be a conflict of interest for me to be going to trial with my attorney because he's not checking nothing, and why is that?

Because on the discovery package, I lost my discovery package.  I have been asking for at least a month, and I never received that again.  Information that I need to go over that's detrimental to my case, and I never received none of this.  I have been asking questions, and I have [filed a grievance against his attorney, John L. McWilliams, with the Michigan Attorney Grievance Commission], and I have talked to Mr. Showorker (sic) at the County Jail and talked to him, and I just feel, you know, all around and all points he's not helping me in my case.  I feel that by going to trial with him, I'll be in a worse situation.
. . .
MR. McWILLIAMS: . . . Your Honor, obviously I'm the court-appointed lawyer for Mr. Willie Hunter.  I was with him at the Preliminary Examination and saw him in the jail and prepared for that Preliminary Examination and participated in that sense.

Then I have visited him on a number of occasions at the Wayne county Jail and listened to the things that he's told me and gone over those things that I have recognized with regard to the file that I needed to with regard to his defense of this case.

He also has received the benefit of being able to call me collect, which has done on a number of occasions.  He's had relatives call me.  So there has been direct and constant communication between myself and Mr. Hunter.

He says that he has lost his discovery package, but he acknowledges that I have first of all given him a discovery package.  I have brought to him either in total or piecemeal other parts of the discovery package and have his receipt for it along with in fact the transcript of the Preliminary Examination.

The thing that really disturbs me most from what he tells me now or from what we learned this morning, he's filed a grievance against me with the Attorney Grievance Commission.  I will take him at his word that he's done that.
I have not received any prior notice of that fact, and I know that sometimes there are several weeks or months in between the time of getting it and sending it to the lawyer.

But if that in fact is the case, Judge, I really have some now hard feelings because now I am personally injected into this affray with regard to the representation of this defendant.  And although prepared to go forward as best we can in the defense of this case and the position that my client is in, I can tell you right now that there are some feelings on my part with regard to the representations of Mr. Hunter.

THE COURT: Well, let me say this. Certainly on my dealing with both Mr. Robiner [co-defendant's counsel] and Mr. McWilliams, I know that they both are very conscientious lawyers. I think that the statements of the defendants are very generalized at this particular point, and I think that there has not been an adequate basis set forth to discharge the attorneys in this particular case, and we will go forward.

The court refused Petitioner's request for substitution of counsel (11/23/04 Hrg. at 4-12.)

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). The right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.* at 163-64, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

Furthermore, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988). Moreover, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159.

13

Because an indigent defendant has no absolute right to appointed counsel of choice and because the focus of the Sixth Amendment inquiry is on effective advocacy, a criminal defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel.  *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).  Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney."  *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).  The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the district court.  *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The United States Court of Appeals for the Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel:  (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense.  *See Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8).  These factors are balanced with the public's interest in the prompt and efficient administration of justice.  *See Iles*, 806 F.2d at 1131, n.8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

As evidence of a conflict of interest, Petitioner points to his attorney's expression of "hard feelings" (Pet. at 19) after he learned his client filed a grievance against him. But, as the Michigan Court of Appeals held:

> Hunter <u>did not demonstrate good cause for the appointment of substitute counsel</u>. . . . Mere allegations that a defendant lacks confidence in his trial counsel do not constitute good cause for substitute counsel. . . . Hunter's generalized

14

statements do not equate to a difference of opinion about a fundamental trial tactic. Further, Hunter's attorney apprised the trial court that he visited Hunter, listened to him, communicated with him, and identified what measures he needed to take to craft a defense. Although Hunter's counsel indicated that he had hard feelings toward Hunter after learning of the grievance, he never indicated that this would compromise his representation or that he was unwilling or unprepared to proceed. Accordingly, the trial court <u>did not abuse its discretion in denying Hunter's request for substitute counsel</u>.

*Perin*, 2006 Mich. App. LEXIS 2139, at *15-16 (emphasis supplied).

Petitioner did not establish a basis for the grievance. While McWilliams was candid about his "hard feelings" in response to the grievance, he also said he was "prepared to go forward as best we can in the defense of this case and the position that my client is in." (Pet. at 29-30.) Counsel's admission to having hard feelings" after learning his client filed a grievance against him does not amount to a conflict of interest. Furthermore, it is not enough for Petitioner to allege, "I'm not getting the right representation right here," and "my attorney [is] not checking nothing." (11/23/04 Hrg. at 5.)

Petitioner has not established the existence of a "conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson*, 761 F.2d at 280. Hence, Petitioner did not demonstrate the requisite "good cause" to warrant the substitution of counsel. *Iles*, 906 F.2d at 1130. The decisions of the trial court and the Michigan Court of Appeals are consistent with federal law. For that reason, this court rejects Petitioner's contention that denial of his motion for substitution of his appointed counsel was in contravention of his federal constitutional rights.

### 2. Counsel's Arguments at Trial

15

Petitioner further alleges that his attorney's conduct and trial strategy deprived him of his federal rights. Specifically, Petitioner avers that counsel effectively conceded Petitioner's guilt, and thus deprived Petitioner of his right to effective counsel. During the defense's closing arguments, McWilliams told the jury:

> We also have to be realistic in the defense of Mr. Hunter and speak to you on behalf of him with regard to the realistic participation in this event and the charges that are leveled against him.
>
> You know that the Judge has read you originally the charge called the Information, but this is first degree murder. This is felony murder. There's a charge called assault with intent to commit murder and several other charges having to do with a firearm, which have been just alluded to, and stipulations were definitely drawn in several of those.
>
> Ms. Raymond [the prosecutor] would have you believe that we have two equal participants in the event of August 12th, 2004 at the Harper Liquor Store. I believe from the testimony and from your observations here in court and from the witnesses and from the evidence that we have actually two persons, two separate persons, who the Judge will tell you you must look at individually and separately.
>
> The other defendant is different from this defendant. Willie Hunter is certainly different. You heard that the clothing that he was wearing when he was arrested is the clothing he is wearing today.
>
> I would suggest to you that his position in this matter has been separate from David Perin, the other defendant, because Willie Hunter is the stooge. He's the flunky. He's the lackey for Mr. Perin, the other defendant. But he was the puppet. So, therefore, I will ask you to look at his true participation as you view the evidence realistically in this case.
>
> First of all, you will look at the statement that was allegedly taken from Mr. Hunter down in Tupelo, Mississippi, obviously a number of miles away from the Detroit, Michigan Area. Alone at the Tupelo Police Station with Detroit Police Officers. Obviously it was an emotional time for him. You can imagine what he was feeling and the fear that he was in, and you see the resulting statement that was made.
>
> You'll look at it. You will read it, and you will see in there what was described as his participation in the event. And if you believe it, or if you are required realistically to look at it, what you have to decide, because you will have to decide whether or not there was participation, then in that event my client is –

Petitioner then interrupted his attorney, asking, "You saying that I participated in this matter or something?"  The court then instructed Petitioner to stop talking, and his attorney continued:

> I will tell you that we're not acknowledging the participation.  Okay.  But we have to look at realistically in view of the overall picture of the case because you have to take into the jury room the statement that was allegedly made under the circumstances by Mr. Hunter. . . .
>
> And you will see through the identification of any alleged perpetration on behalf of Mr. Hunter, it did not represent first degree murder.  It did not represent felony murder.  And if anything at all, if you get over the identification, it only represented the charge commonly known as assault with intent to commit murder.
>
> Because only in that statement was there orders giving and putting and placing in fear, certainly much less than murder, premeditated murder, felony murder on behalf of Mr. Hunter.
>
> The dominant person in this case giving the orders, the person pulling the strings in this matter was someone other than Mr. Hunter.
>
> You will have to look realistically at this case on his behalf because once again he's in the hot seat.  He does not like this.  He would like to have you believe that he did not participate and also that he did not, was not sufficiently identified in this case because if he was not, then you will not have to proceed with looking at the other matter.
>
> But once again I ask you not to paint Willie Hunter with the broad brush of another person and blame him for things that he did not become involved in or know about or have a mental intent when it happened.  You'll see that in the documentation and in the evidence that is before you. . . .
>
> The Judge is going to tell you that there are certain criteria upon which you will consider the issues of felony murder and premeditated murder, and a great deal of it has to go to the mental intent of the accused at the time that the event was being perpetrated.
>
> I will ask you to look at the evidence and understand the position, if you have to look at this case realistically, as to Mr. Hunter being under the thumb of the other participant if you so find. . . .

17

> That at most Mr. Hunter was only taking orders and following directions and doing what it is that the Sergeant allegedly took in terms of the statement from Mr. Hunter in Tupelo, Mississippi.

(Trial Tr. 12/8/2004 at 69-74.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test to determine whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. A petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689

On appeal, the Michigan Court of Appeals said:

> [I]t is apparent that defense counsel made the contested comments as a form of trial strategy. . . .
>
> It is not ineffective assistance of counsel for defense counsel to concede lesser offenses in the hope of avoiding a guilty verdict on greater ones. . . . Only a complete concession of guilt constitutes ineffective assistance of counsel. . . . Because defense counsel's arguments were advanced with the objective of obtaining a verdict on a lesser offense than first-degree murder, if the jury found that Hunter participated in the crimes at all, Hunter's ineffective assistance of counsel claim is without merit.

18

*Hunter*, 2006 Mich. App. LEXIS 2139, at *17-18 (citations omitted and emphasis supplied).

In a similar habeas proceeding in this district, the court held that it was not in derogation of the petitioner's rights for his counsel to refrain from contesting the home-invasion and robbery charges against his client, and dispute only the more serious counts relating to criminal sexual conduct, after the client had effectively conceded his culpability in the break-in while testifying at trial. (The defendant was acquitted of the criminal sexual conduct charges, but convicted of the charges relating to the break-in.) *See Smith v. Jones*, No. 2:03-cv-10230, 2007 U.S. Dist. LEXIS 12329 (E.D. Mich. Feb. 7, 2007).

In the instant case, Petitioner's counsel was faced with the similar strategically problematic situation of tying to defend a client who had confessed to voluntarily taking part in the crime. Counsel had attempted to suppress the confession, but the trial court had refused. The surviving victim had given direct testimony clearly and dramatically implicating Petitioner in the robbery. Petitioner had also rejected a plea offer. Making the most of what little Petitioner left him work with, McWilliams carefully posited his argument beginning with an "if," *i.e.*, *if* the jury were to find that Petitioner was involved at all, which he did not concede, he went on to characterize his client's involvement as that of a lackey, a mere accomplice. McWilliams tried to differentiate his client from the shooter, Perin, the man who was obviously more directly responsible for the carnage. In effect, McWilliams pleaded for the jury's mercy. "At most Mr. Hunter was only taking orders and following directions," McWilliams said. (Trial Tr. 12/8/2004 at 74 (emphasis supplied).) However, counsel did not, in fact, concede Petitioner's guilt. Rather, he

19

suggested, first, that the State had not met its burden of proving Petitioner's guilt, or, in the alternative (if the jury found Petitioner responsible), the jury should consider Petitioner's responsibility as that of a bit player, as opposed that of a cold-blooded murderer.

The United States Supreme Court has held that the fact that trial counsel's strategy is ultimately unsuccessful does not mean it is objectively unreasonable. Attorneys, even the most highly skilled, are permitted to be realistic, and in any event must work with what they have. They are not expected to pull rabbits from hats. "Judicial scrutiny of counsel's performance must be highly deferential. . . . [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

This strategy may have caught the Petitioner off-guard during closing argument, and his angry, blurted-out challenge in the midst of argument – "You saying that I participated in this matter or something?" (Trial Tr. 12/08/2004 at 69-70) – probably did not help his cause. McWilliams, perhaps, could have discussed or tried to explain his intended strategy more carefully before argument, but this does not render the strategy itself unreasonable or rise to the level of a federal constitutional claim.

As the Michigan Court of Appeals noted, "[b]ecause defense counsel's arguments were advanced with the objective of obtaining a verdict on a lesser offense than first-degree murder, if the jury found that Hunter participated in the crimes at all, Hunter's ineffective assistance of counsel claim is without merit." *Hunter*, 2006 Mich. App. LEXIS 2139, at *18.   Because the court does not find that counsel's performance

20

was "outside the wide range of professionally competent assistance," *Strickland*, 466

U.S. at 690, it does not conclude "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  The

decisions of the trial court and Michigan Court of Appeals are consistent with federal

law.  Petitioner was not denied his right to effective assistance of counsel under the

U.S. Constitution.

## IV.  CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of

appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus

or it may wait until a notice of appeal is filed to make such a determination.  *Castro v.*

*United States,* 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to deny the habeas

petition, the court has, of course, studied the case record and the relevant law, and

concludes that it is presently in the best position to decide whether to issue a COA.  *See*

*Id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . .  will

have an intimate knowledge of both the record and the relevant law,'" the district judge

is, at that point, often best able to determine whether to issue the COA.) (quoting *Lyons*

*v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled on other*

*grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of

the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel,* 529 U.S.

473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable

jurists would not debate the court's conclusion that the petition does not present any

claims upon which habeas relief may be granted.  Therefore, the court will decline to

issue a certificate of appealability.

## V.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas

corpus is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of

appealability.

    S/Robert H. Cleland                   
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 31, 2009, by electronic and/or ordinary mail.

    S/Lisa G. Wagner                    
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\07-15049.HUNTER.2254.ctb.lm.RHC.wpd